## Commonwealth *vs.* Miguel Berrios.

No. 06-P-1353.

Hampden. November 5, 2007. - May 22, 2008.

Present: Perretta, Gelinas, & Kantrowitz, JJ.

*Assault and Battery. Rape. Practice, Criminal,* Double jeopardy, Duplicative convictions, Instructions to jury, Trial of indictments together, Speedy trial, Assistance of counsel.

At the trial of indictments charging the defendant with rape and assault and battery, the possibility existed that the conviction of assault and battery was duplicative of the conviction of rape, which in turn gave rise to a substantial risk of a miscarriage of justice, where the Commonwealth, in its closing argument, invited the jury to use the potentially distinct act of choking the victim as the underlying fact of force required for the rape, and the judge's instructions did not make clear that the assault and battery had to be based upon separate and distinct acts from the acts supporting the rape; moreover, the fact that the defendant received concurrent sentences for the crimes did not detract from that conclusion. [753-755]

A Superior Court judge properly denied the criminal defendant's motion for relief from judgment based on the joinder of rape indictments involving two different victims, where the offenses were sufficiently related and factually similar, where the judge instructed the jury appropriately, and where the defendant made no showing to support his contention that joinder prevented him from offering important testimony with respect to the incident involving one of the women because he had a strong reason not to offer that testimony with respect to the other. [756]

There was no merit to a criminal defendant's claims that he was denied his right to a speedy trial [756-757], that his counsel was ineffective for failing to obtain the results of a toxin screen that would not have accomplished something material for the defense [757], or that he was denied his right to confront a witness when cross-examination was limited [757].

Indictments found and returned in the Superior Court Department on July 1, 2004.

The cases were tried before *Mary-Lou Rup,* J.

*Karen L. Swenson* for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

GELINAS, J. The defendant was indicted in July, 2004 on one count of assault and battery, G. L. c. 265, § 13A(*a*), and six counts of rape, G. L. c. 265, § 22(*b*). On motion at the close of the Commonwealth's evidence the court entered findings of not guilty of two of the rape counts. After trial, the jury found him not guilty of two of the remaining counts of rape, but guilty of assault and battery and rape with respect to Ms. B, and of rape with respect to Ms. S.[1] The attacks on the two different women occurred within a span of two months.

On appeal, the defendant argues that his conviction of assault and battery with respect to Ms. B cannot stand, as it results in multiple punishments for the same offense in violation of double jeopardy protections; that the trial court erred in denying his motion for relief from prejudicial joinder of the indictments; that even if the indictments were properly joined, the "best interests" of justice required separate trials; that he was denied a speedy trial as guaranteed by Mass.R.Crim.P. 36, 378 Mass. 909 (1979); that trial counsel was ineffective in failing to properly investigate the case, depriving him of the right to a fair trial; and that he was denied his constitutional right to confront witnesses when the court limited cross-examination of Ms. B.

Except as to the issue of duplicative convictions, the defendant's arguments are without merit. The combined effect of statements in the Commonwealth's closing argument, the lack of a "specific act" instruction by the judge, and the judge's instruction regarding the act constituting assault and battery and the acts constituting force, created the possibility that the jury's verdict on the assault and battery count was premised on the same act used to support the force requirement for the rape conviction. In these circumstances the conviction for assault and battery cannot stand.

We recite the facts generally, reserving detail for a discussion of the issues. In early evening, Ms. B was in downtown Springfield, looking to buy drugs. She met the defendant, whom she had never seen before, and he offered to sell her "crack" cocaine. She agreed to a purchase, and the defendant suggested they smoke the cocaine together. Ms. B agreed, and the defendant

---

[1] We adopt the designations given the two victims by the parties.

led her to Riverfront Park, three-quarters of a mile away. At the park, he directed her to some stairs underneath the boardwalk, a location that would be out of view from any passersby. Ms. B "blacked out." When she awoke, she was on her back, and the defendant was on top of her with his hands around her neck, choking her.

The defendant told her that he was going to "do" her twice. He warned her that her veins were popping out of the side of her head and that he knew how to kill her if he wanted to. The defendant forced Ms. B to remove her pants. The defendant then raped her twice.

When he was done, the defendant repeatedly apologized. The two began to walk together out of the park. Ms. B "just went along" because she wanted to reach a more public setting. During their walk, the defendant suggested that they meet later at a certain restaurant a "couple blocks" away, and he would have drugs. Ms. B never went to the restaurant. Five days later, she reported the incident to a police officer. She was taken to the hospital, where she was interviewed by a police detective.

The second attack occurred some seven weeks later. The incident proceeded along lines similar to the attack on Ms. B, although in this encounter Ms. S knew the defendant. The two met outside a convenience store. The defendant invited her to go for a walk with him in the park and to smoke marijuana. Ms. S accepted the invitation, and the two walked toward Riverfront Park, which was less than one-quarter mile from the convenience store. Reaching a secluded spot, the defendant knocked Ms. S to the ground. Ms. S blacked out. The next thing she remembered was that she was on her back, and the defendant was on top of her. The defendant's hands were on her throat, and then he grabbed her by the mouth. Ms. S struggled, to no avail. The defendant ordered Ms. S to pull down her pants. She complied. He told her that if she yelled he would kill her. After raping her, the defendant started to cry, and apologized for what he had done. After the apologies, the defendant and Ms. S walked out of the park together. Before they parted, the defendant invited Ms. S to meet him at a restaurant the next day.

After Ms. S identified him from a photographic array, the police arrested the defendant. Detective Chapin interviewed

him. The defendant acknowledged that he knew Ms. S and that, on the night in question, he met her at the convenience store. The defendant denied, however, having any sexual contact with Ms. S. Forensic deoxyribonucleic acid (DNA) testing of the garments of Ms. S matched the defendant's DNA profile. At trial, the defendant admitted to having intercourse with the two women in Riverfront Park, but claimed that they had consented.

In its closing statement, the Commonwealth argued that the intercourse was "by force and against her will in each case," and that the jury should consider as evidence on that issue that both witnesses said the defendant had choked them. The trial judge charged the jury that the assault and battery charge with respect to Ms. B rested on the defendant's alleged choking of the victim.

*Duplicative convictions.* The defendant argues that his convictions of both assault and battery and rape with respect to Ms. B were duplicative, and that the conviction of assault and battery cannot stand. On authority of *Commonwealth* v. *St. Pierre*, 377 Mass. 650 (1979), he asserts that the grabbing of Ms. B's neck and choking her and the rape are "so closely related in fact as to constitute in substance but a single crime." *Id.* at 662-663. He further argues this is so especially since the Commonwealth argued that the choking was the predicate force used to accomplish the rape, and the judge instructed that for conviction of assault and battery the Commonwealth was required to prove that the defendant choked Ms. B.

Assault and battery is a lesser included offense of rape, *Commonwealth* v. *Ortiz*, 47 Mass. App. Ct. 777, 780 (1999), and a conviction of assault and battery is therefore susceptible of being duplicative of a conviction of rape. *Commonwealth* v. *Johnston*, 60 Mass. App. Ct. 13, 22 (2003). See *Commonwealth* v. *Howze*, 58 Mass. App. Ct. 147, 149-150 (2003) ("Double jeopardy principles ordinarily forbid the imposition of multiple penalties for such cognate crimes, provided they arise out of a single criminal act"). In order to sustain both convictions, the acts used to support one conviction cannot be the same acts used to support the other. See *Commonwealth* v. *Walker*, 426 Mass. 301, 303-304 (1997). See also *Commonwealth* v. *Sanchez*, 405 Mass. 369, 381-382 (1989). Convictions of two cognate

offenses will be sustained when there is no chance that the finder of fact based the two offenses upon the same act, see *Commonwealth* v. *Smith*, 60 Mass. App. Ct. 204, 207-208 (2003), citing *Commonwealth* v. *Johnston*, 60 Mass. App. Ct. at 22, that is, where the judge instructs the jury explicitly that they must find separate and distinct acts underlying the different charges. See, e.g., *Commonwealth* v. *Maldonado*, 429 Mass. 502, 509 (1999); *Commonwealth* v. *Santos*, 440 Mass. 281, 293-294 (2003); *Commonwealth* v. *King*, 445 Mass. 217, 226 (2005). However, "if there is any possibility that the jury's verdicts here were premised on a single act, reversal as to the lesser offense . . . would be required." *Commonwealth* v. *Howze*, 58 Mass. App. Ct. at 150.

Here, the Commonwealth, in its closing, invited the jury to use the potentially distinct act, the choking, as the underlying fact of the force required for the rape of Ms. B.[2] Evidence of choking is the first evidence the Commonwealth summarizes in its closing argument as applicable to the element of force in the rapes. Further, the Commonwealth never, in either its opening or closing, stated that any evidence would be, or had been, presented to prove the charge of assault and battery.

The court's instructions did not, unlike *Commonwealth* v. *Maldonado, supra,* and *Commonwealth* v. *King, supra,* make clear that the charge of assault and battery had to be based upon acts separate and distinct from those supporting the rape of Ms. B. Indeed, the judge instructed the jury that the assault and battery charge was premised on the act of choking Ms. B., and she never instructed the jury that they therefore could not use the act of choking as the predicate act of force required for the rape. She charged, rather, that "[o]n the issue of force, you consider all of the circumstances in this case." The judge went on to instruct:

"[W]hen you consider the issues of use of force and lack

---

[2] "The next thing you have to consider is whether the defendant accomplished that intercourse by force and against her will in each case . . . . First of all, you have heard from both witnesses . . . that the defendant choked [them] . . . . [Ms. B] told you that, in fact, she regained consciousness, having apparently lost consciousness, to find the defendant with his hands around her throat . . . . In the case of [Ms. B], you will see . . . she still had visible marks and scratches on her neck several days after the fact."

of consent, you may consider whether there was any evidence of attempts to restrain or confine the woman in question, of any violence by Mr. Berrios toward the woman in question . . . ."

We think that instructions in this form, coupled with the Commonwealth's closing argument, made it possible that the jury considered the act of choking as the force required for the rape, as well as the predicate act for the assault and battery. As noted earlier, if there is any possibility that the jury's verdicts were premised on a single act, then reversal of the lesser offense is required. *Commonwealth* v. *Howze*, 58 Mass. App. Ct. at 150.

As no request was made for an instruction regarding separate acts, and no motion made to vacate the assault and battery conviction, we consider whether there was a substantial risk of a miscarriage of justice with regard to the duplicative convictions. See *Commonwealth* v. *Thomas*, 401 Mass. 109, 119 (1987) (issue raised for first time on appeal reviewed for substantial risk of miscarriage of justice). We conclude that there is such a risk. Even where, as here, there is evidence of separate and distinct acts sufficient to convict with respect to each charge, the confusion introduced because of the failure to instruct the jury of the need for separate and distinct acts as a basis for conviction creates a substantial risk of miscarriage of justice. See *id.* at 120 (holding that permitting both conviction of indecent assault and battery and conviction of rape to stand, when they were so close in fact as to constitute one crime, constituted substantial risk of a miscarriage of justice). See *Commonwealth* v. *Howze*, 58 Mass. App. Ct. at 151-152.

That the defendant's sentence for the assault and battery conviction was concurrent to that of the rape does not prevent a substantial risk of miscarriage of justice. "A defendant's protection against multiple punishments for the same offense bars conviction and sentencing on a lesser included offense, even if ordered to run concurrently with the sentence for the greater offense." *Commonwealth* v. *Gunter*, 427 Mass. 259, 275 (1998). See *Commonwealth* v. *Constantino*, 443 Mass. 521, 527 (2005) (holding that concurrent terms of probation can give rise to a substantial risk of a miscarriage of justice).

*Other issues.* The defendant's remaining arguments are without merit. As to his claim that the cases were improperly joined for trial, "[t]he propriety of joinder is a matter for the trial judge's discretion." *Commonwealth* v. *Sullivan*, 436 Mass. 799, 803 (2002). The offenses were sufficiently related, see *Commonwealth* v. *Delaney*, 425 Mass. 587, 594 (1997), and were factually similar, see *Commonwealth* v. *Pillai*, 445 Mass. 175, 180 (2005). In addition to the chronological and spatial proximity of the assaults, the judge listed five appropriate factors, demonstrating that the offenses were related. The evidence of each crime would be admissible in the other trial were the charges to be severed. *Id.* at 180-181. See *Commonwealth* v. *Rancourt*, 399 Mass. 269, 275-276 (1987) (evidence of prior bad acts may be admitted to establish knowledge, intent, motive, or method). The judge properly examined the similarities in totality, rather than the differences. *Commonwealth* v. *Pillai, supra* at 181. Further, the trial judge explicitly instructed the jury that they were to consider the evidence separately, and that a decision of guilt with respect to one offense could not control their decision on any other of the offenses. See *Commonwealth* v. *Gaynor*, 443 Mass. 245, 263 (2005) (instructions sufficiently curative to prevent impermissible conviction of one crime on facts supporting another). In fact, the jury acquitted the defendant of some of the charges.

As to the contention that joinder prevented the defendant from offering important testimony with respect to the incident involving one of the women, because he had a strong reason not to offer that testimony with respect to the other, we think the record amply supports the judge's finding that there was no "convincing showing that [the defendant] had both important testimony to give concerning one count and a strong need to refrain from testifying about the other count." *Commonwealth* v. *Williams*, 18 Mass. App. Ct. 945, 947 (1984). The defendant admits that he made no showing whatsoever, not even the minimal showing that was deemed insufficient in *Commonwealth* v. *Williams, supra.* The defendant had a full opportunity to make disclosure of the testimony beforehand, and did not do so.

We also reject the defendant's claim that he was denied his right to speedy trial; the Commonwealth's computation, with ap-

propriate exclusions, reveals that the defendant's trial was well within the twelve-month time frame. As well, we reject the defendant's claim that his counsel was ineffective in trial preparation for failing to obtain the results of a toxin screen with respect to Ms. B's drug use. There was no motion for new trial presenting evidence of such a screen, and nothing in the record before us suggests the results of such a screen would accomplish something material for the defense. See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). "The occasions when a court can resolve an ineffective assistance claim on direct appeal are exceptional." *Commonwealth* v. *Zinser*, 446 Mass. 807, 809 n.2 (2006). That exception occurs only where "the factual basis of the claim appears indisputably on the trial record." *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994). We also note that the record reflects that the defendant was able to establish Ms. B's drug use on cross-examination.

We reject as well the defendant's argument that limiting his cross-examination of Ms. S was error. We agree with the Commonwealth that the question of her prior drug use with the defendant had limited probative value. "The judge has broad discretion to determine the extent of cross-examination and to exclude evidence of limited probative value." *Commonwealth* v. *Kosilek*, 423 Mass. 449, 458-459 (1996) (citations omitted).

The defendant's conviction of assault and battery is vacated. The remaining convictions are affirmed.

*So ordered.*