NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11616

COMMONWEALTH  vs.  AMANDA KELLY
(and eleven companion cases[1]).


Plymouth.     October 7, 2014. - February 20, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.


Assault or Battery for the Purpose of Intimidation.  Civil
     Rights.  Practice, Criminal, Instructions to jury,
     Duplicative convictions, Lesser included offense.



     Indictments found and returned in the Superior Court
Department on August 14, 2008.

     The cases were tried before Paul E. Troy, J.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Kirsten A. Zwicker Young (Glen A. Tagliamonte with her) for
Amanda Kelly.
     Meghan E. Tafe Vadakekalam for Christopher M. Bratlie.
     Thomas C. Foley for Kevin P. Shdeed.
     Kristin Freeman, Assistant District Attorney, for the
Commonwealth.
     Steven M. Freeman, Melissa Garlick, Lauren A. Jones, & Seth
M. Marnin, of New York, & Michael N. Sheetz & Adam S.

---

[1] Five against Amanda Kelly, four against Christopher M.
Bratlie, and two against Kevin P. Shdeed.

Gershenson, for Anti-Defamation League & others, amici curiae, submitted a brief.

SPINA, J.  This case arises from events that transpired shortly after midnight on June 12, 2008, during a house party in Marshfield where multiple guests, who are Caucasian, committed acts of physical violence against Tizaya Robinson, who is African-American.  Following a jury trial in the Superior Court, the defendant, Amanda Kelly, was convicted of, among other offenses, a violation of civil rights with bodily injury, G. L. c. 265, § 37, and assault and battery for the purpose of intimidation resulting in bodily injury, G. L. c. 265, § 39 (b).[2] Her codefendants, Christopher M. Bratlie and Kevin P. Shdeed, each were convicted of a violation of civil rights without bodily injury, and assault and battery for the purpose of intimidation without bodily injury.  Bratlie also was convicted of assault and battery as a lesser included offense of assault and battery by means of a dangerous weapon (shod foot), and assault and battery.  All three defendants appealed their convictions to the Appeals Court, and we transferred their cases to this court on our own motion.  Principal among the several

---

[2] Amanda Kelly also was convicted of assault and battery by means of a dangerous weapon (stick), G. L. c. 265, § 15A (b); assault and battery by means of dangerous weapon (shod foot); assault and battery by means of a dangerous weapon (knife) as a lesser included offense of aggravated assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (c); and assault and battery, G. L. c. 265, § 13A (a).

claims of error is the defendants' contention that the judge failed to instruct the jury properly that in order to convict the defendants of assault and battery for the purpose of intimidation, the jury must find that race was a "substantial factor" motivating the commission of the unlawful conduct. We conclude that because the Legislature did not quantify the language of G. L. c. 265, § 39, in such terms, the judge was not required to so instruct the jury. Accordingly, for this reason, as well as others that we shall discuss, Kelly's convictions are affirmed, Shdeed's convictions are affirmed, and Bratlie's convictions are affirmed in part and vacated in part.[3]

1. Background. We summarize the facts in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), reserving certain details for our discussion of the issues raised.

Shortly before midnight on the night of June 11, 2008, Robinson and two friends, Christina Sacco and Korrie Molloy, went to a party at a home on Careswell Street in Marshfield. Not long after their arrival, Jay Rains, who is Caucasian, approached Robinson and asked him if he had a problem with one of Rains's friends. Robinson replied that he did not know the

---

[3] We acknowledge the amicus brief submitted by the Anti-Defamation League, Gay & Lesbian Advocates & Defenders, the Lawyers' Committee for Civil Rights and Economic Justice, MassEquality, the Massachusetts Black Lawyers Association, the Massachusetts LGBTQ Bar Association, and the South Asian Bar Association of Greater Boston.

person about whom Rains was speaking.  Joshua Wigfall, who is African-American, interceded, told Rains to leave Robinson alone, and placed himself between the two men.  Rains repeatedly called Robinson a "nigger."  Robinson became angry and replied, "[D]on't talk to me like that.  You don't even know me."  Wigfall then attempted to remove Rains from the property because Rains was drunk and rowdy, and the two got into an argument that led to a physical altercation at the end of the driveway of the house.  Other partygoers gathered around to watch the fight, and Wigfall punched Rains until he fell to the ground.  Having prevailed, Wigfall soon left the premises.

Rains continued yelling, saying the word "nigger," and asking Robinson why he was still at the party.  Robinson told Rains to stop using that word, but his request fell on deaf ears.  Rains and Robinson started arguing.  The three defendants joined the argument along with other partygoers and, in an effort to distance himself from the advancing crowd, Robinson backed down the driveway in the direction of Careswell Street.  Eventually, there were at least five people, and as many as fifteen people, yelling at and arguing with Robinson, swearing at him, and calling him a "nigger."  All of the individuals in this crowd were Caucasian.  Robinson removed his sweatshirt so that no one could pull it over his head in the event of a fight.  He continued to back out of the driveway and into Careswell

Street, moving in the direction of the Garlic Restaurant, which was diagonally across the street from the house where the party was being held. As the crowd surged toward Robinson, he removed a can of dog repellent from his pocket and sprayed them.

The crowd became angry and started chasing after Robinson. Kelly and several other partygoers punched Robinson. He fell to the ground, got back up, sprayed more dog repellent at them, and quickened his pace down Careswell Street. The crowd then became enraged, screaming and running after Robinson, calling him a "stupid nigger," and yelling "kill that fuckin' nigger." Robinson eventually reached the parking lot of the Garlic Restaurant, where Shdeed was walking back and forth with a stick in his hands, yelling "nigger." Rains punched Robinson, and he fell to the ground. Robinson arose, climbed over a wooden fence that was around the parking lot, and ended up back on Careswell Street. Ten to fifteen people closed in on Robinson and, when he ran out of dog repellent, jumped him.

Robinson saw a man approaching him with a knife. He was hit in the face and head with something hard (probably an elbow), and he was knocked to the ground. As the crowd converged on him, Robinson curled up in a fetal position to protect himself. Kelly, Bratlie, Shdeed, and numerous other individuals simultaneously kicked and punched Robinson while he was on the ground. Kelly repeatedly kicked him in the face and

jumped up and down on his head. Shdeed struck Robinson with a large stick five or six times using tremendous force while saying, "I'm going to kill you, you fucking nigger. I'm going to kill you. How do you like that, you fucking nigger." Robinson also had a bottle broken over his head. This attack lasted for several minutes and, apart from Sacco, none of the onlookers came to Robinson's aid. Kelly Orlando, who was housesitting nearby and witnessed this attack on Robinson, made a 911 telephone call to the Marshfield police department. When someone in the crowd announced that the police were coming, everyone ran away. Officers arrived on the scene; Amanda Kelly and Shdeed, among others, were placed under arrest. Bratlie was arrested the following day at his home.

Robinson, who was covered in blood and appeared lifeless, was taken to South Shore Hospital by Sacco. He had been stabbed in the left leg, left forearm, and right elbow; he sustained nerve damage in his hand and foot; and he had multiple "lumps" on his head. Robinson subsequently was transferred to Brigham and Women's Hospital, where he spent a few more days recovering from his injuries. As of the time of trial in November, 2011, Robinson continued to suffer from the lingering effects of his injuries, including nerve damage in his hand and foot.

2. _Jury instructions on racial motivation under G. L. c. 265, § 39_. General Laws c. 265, § 39, is known as a "hate

crime" statute.  Commonwealth v. Barnette, 45 Mass. App. Ct. 486, 489 (1998).  At the time of the defendant's trial, § 39 (a) stated, in pertinent part:  "Whoever commits an assault or a battery upon a person . . . with the intent to intimidate such person because of such person's race, color, religion, national origin, sexual orientation, or disability shall be punished . . . ." (emphasis added).[4]  Further, § 39 (b) of the statute provides, in relevant part:  "Whoever commits a battery in violation of this section and which results in bodily injury shall be punished . . . ."

When the trial judge instructed the jury on a violation of G. L. c. 265, § 39, he stated that the Commonwealth had to prove three elements beyond a reasonable doubt:  "First, that the defendants committed an assault and battery; second, that the defendants did this act with the specific intent to intimidate [Robinson] because of [his] race, color, religion, national origin, sexual orientation or disability; [and] third, that the assault and battery resulted in bodily injury."  The judge explained that "intent" refers to "a person's objective or purpose," and that "specific intent" is "the act of concentrating or focusing the mind for some perceptible period. It is a conscious act with the determination of the mind to do

---

[4] Effective July 1, 2012, G. L. c. 265, § 39 (a), was amended to also include gender identity.  See St. 2011, c. 199, § 8.

an act."  The judge then reiterated that the jury must determine "whether the Commonwealth has proved beyond a reasonable doubt, as it must, that the defendants acted with the specific intent to intimidate Tizaya Robinson <u>because of</u> his race or color" (emphasis added).

During deliberations, the judge received the following question from the jury:  "Assault and battery for purposes of intimidation <u>solely</u> because of race or in part because of race?"  In response to the question, the judge first reread the three elements of the offense that the Commonwealth was required to prove beyond a reasonable doubt.  The judge then instructed the jury as follows:  "I said the Commonwealth must prove beyond reasonable doubt that the defendants did this act with the specific intent to intimidate [Robinson] because of [his] race, color, religion, national origin, sexual orientation or disability but this reason does <u>not</u> have to be the <u>sole</u> reason for the assault and battery" (emphasis added).  All of the defendants objected to this supplemental instruction.[5]

_____

[5] Having been "let go" by the judge after the jury started deliberations, the lawyers for Bratlie and Shdeed were not present in the court room when the judge gave the supplemental instruction.  However, counsel for Kelly stated for the record that she had spoken with both attorneys about the jury's question, that they had discussed the applicable case law, and that they all were of the opinion that the judge simply should reread the instruction and advise the jury to follow the law.  When counsel for Kelly objected to the supplemental instruction that was given, the judge noted the objection with respect to all three defendants.

On appeal, the defendants contend that the judge erred when he instructed the jury that race does not have to be the sole reason for the alleged crime. The defendants acknowledge that the judge's original instructions on this charge were correct. However, in their view, the judge's failure to reinstruct the jury on the definition of specific intent,[6] coupled with his supplemental instruction on racial motivation, may have permitted the jury to infer that they were required to convict the defendants of violating G. L. c. 265, § 39, if race played even a small or insignificant role in the assault and battery. More broadly, the defendants contend that jury instructions pertaining to assault and battery with the intent to intimidate should specify that the jury must find that race was a "substantial factor" motivating the commission of the offense. We disagree.

Where, as here, a defendant raises a timely objection to a judge's instruction to the jury, we review the claim for prejudicial error. See Commonwealth v. Vuthy Seng, 456 Mass. 490, 502 (2010). Appellate courts "conduct a two-part test: 'whether the instructions were legally erroneous, and (if so)

[6] After thoroughly discussing the jury's question with counsel for Kelly and the Commonwealth, and informing them of the manner in which he would respond to the jury, the judge asked whether the parties would like for him to reread the whole instruction. Counsel for Kelly stated that the judge should "just address the elements," and not "seek to define them again."

whether that error was prejudicial.'"  Kelly v. Foxboro Realty Assocs., LLC, 454 Mass. 306, 310 (2009), quoting Masingill v. EMC Corp., 449 Mass. 532, 540 n.20 (2007).  See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).  An error is not prejudicial if it "did not influence the jury, or had but very slight effect . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, [then] it is impossible to conclude that substantial rights were not affected."  Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994), quoting Commonwealth v. Peruzzi, 15 Mass. App. Ct. 437, 445 (1983).  See Cruz, supra. Trial judges have "considerable discretion in framing jury instructions, both in determining the precise phraseology used and the appropriate degree of elaboration."  Commonwealth v. Newell, 55 Mass. App. Ct. 119, 131 (2002).  Likewise, they have discretion to determine "[t]he proper response to a jury question," thereby "furthering the [jury's] difficult task of coming to a unanimous verdict."  Commonwealth v. Waite, 422 Mass. 792, 807 n.11 (1996).

Generally speaking, a hate crime is "a crime in which the defendant's conduct was motivated by hatred, bias, or prejudice, based on the actual or perceived race, color, religion, national origin, ethnicity, gender, or sexual orientation of another

individual or group of individuals." Commonwealth v. Anderson, 38 Mass. App. Ct. 707, 709 n.5 (1995), quoting H.R. 4797, 102d Cong., 2d Sess. (1992). See G. L. c. 22C, § 32 (defining "[h]ate crime" for purposes of G. L. c. 265, §§ 37 and 39). "[H]ate crime laws such as G. L. c. 265, § 39, operate to 'enhance the penalty of criminal conduct when it is motivated by racial hatred or bigotry.'" Barnette, 45 Mass. App. Ct. at 489, quoting Anderson, supra. "It is not the conduct but the underlying motivation that distinguishes the crime." Barnette, supra. In the context of the present appeal, we analyze G. L. c. 265, § 39, to determine whether the racial animus necessary for conviction under the statute must be quantified, and, in turn, whether the judge's supplemental jury instruction was erroneous.

"The words of a statute are the main source from which we ascertain legislative purpose . . . ." Foss v. Commonwealth, 437 Mass. 584, 586 (2002). More specifically, courts "construe a statute in accord with 'the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.'" Champigny v. Commonwealth, 422 Mass. 249, 251 (1996), quoting Telesetsky v.

Wight, 395 Mass. 868, 872-873 (1985). Courts must follow the plain language of a statute when it is unambiguous and when its application "would not lead to an 'absurd result,' or contravene the Legislature's clear intent." Commissioner of Revenue v. Cargill, Inc., 429 Mass. 79, 82 (1999), quoting White v. Boston, 428 Mass. 250, 253 (1998).

General Laws c. 265, § 39, criminalizes a particular kind of unlawful conduct -- the assault or battery of an individual arising from the perpetrator's specific intent to intimidate such person because of that person's membership in a protected group. See Barnette, 45 Mass. App. Ct. at 489-491. Where, as here, an assault or battery is purportedly based on race, the requirement of specific intent ensures that a defendant's conduct, in fact, is motivated by racial hostility, and precludes conviction in those circumstances where race is merely an incidental component of the crime. See Screws v. United States, 325 U.S. 91, 104 (1945) (one who acts with specific intent "is aware that what he does is precisely that which the statute forbids"). The Legislature established the scope of a defendant's racial motivation when it stated that the defendant's unlawful conduct must be "because of" a victim's race. G. L. c. 265, § 39 (a). If the Legislature had wanted to quantify more explicitly the degree of racial hostility necessary for conviction under the statute, it would have

expressly stated that race must be the "sole" factor or a "substantial" factor in the defendant's conduct. See generally Commonwealth v. Anderson, 461 Mass. 616, 631, cert. denied, 133 S. Ct. 433 (2012); Dartt v. Browning-Ferris Indus., Inc. (Mass.), 427 Mass. 1, 9 (1998). The Legislature did not cabin the language of G. L. c. 265, § 39 (a), in this manner. Contrast, e.g., G. L. c. 269, § 14A ("Whoever telephones another person . . . , repeatedly, for the sole purpose of harassing, annoying or molesting the person or the person's family, . . . shall be punished . . ." [emphasis added]). In our view, the Legislature recognized the possibility of additional factors playing a role in the perpetration of an assault or a battery that occurs "because of" the victim's race. For example, in this case, one such factor could have been Robinson's use of dog repellent on individuals who were converging on him in a threatening manner in the driveway of the home on Careswell Street. By requiring proof that a defendant's actions were specifically motivated by racial animus, the Legislature has ensured that the "hate crime" classification is not applied to individuals whose actions do not fall within the purview of G. L. c. 265, § 39 -- that is to say, individuals who committed an assault or a battery in circumstances where the race of the victim did not play a role in the perpetration of the crime.

The burden is on the Commonwealth to prove that a defendant acted with the specific intent to intimidate a person because of race. See Commonwealth v. Ogden O., 448 Mass. 798, 805 (2007). At trial, a defendant has the opportunity to present his or her defense and to demonstrate to the jury that, whatever the facts, he or she did not possess the requisite specific intent under G. L. c. 265, § 39. It then is incumbent on the jury to decide the reasons for the defendant's alleged unlawful act. See Commonwealth v. Federico, 425 Mass. 844, 848 (1997) (jury given deference as "the final judge of credibility"). Notwithstanding the possibility of other motivating factors, where a jury can find, beyond a reasonable doubt, that a defendant engaged in unlawful conduct "because of" a victim's race, that is sufficient for a conviction under G. L. c. 265, § 39.[7] See

---

[7] The so-called hate crimes reporting act, G. L. c. 22C, §§ 32-35, provides for the collection, analysis, and public dissemination of hate crime data. See 501 Code Mass. Regs. § 4.01 (1993). Pursuant to regulations promulgated by the colonel of the State police in accordance with G. L. c. 22C, § 33, enumerated bias indicators "can assist law enforcement officers in determining whether a particular crime should be classified as a hate crime." 501 Code Mass. Regs. § 4.04(1) (1993). "Bias indicators need not establish that the predominant purpose of a perpetrator's actions was motivated by hatred or bias. It is sufficient for classification of an incident as a hate crime that a perpetrator was acting out of hatred or bias, together with other motives; or that a bias motive was a contributing factor, in whole or in part, in the commission of a criminal act." Id. at § 4.04(2). These provisions plainly suggest that hate crimes occur where bias on the basis of race, religion, gender, sexual orientation, or handicap is a contributing factor, rather than the sole factor, in a perpetrator's actions.

United States v. Piekarsky, 687 F.3d 134, 142-145 (3d Cir.), cert. denied, 133 S. Ct. 549 (2012), and cases cited (where Federal statute criminalizes conduct that interferes with, intimidates, or injures individual "because of" race, 42 U.S.C. § 3631 [2012], government need not prove that race was sole or primary motivation behind assault because presence of other motives, including personal animus, anger, or revenge, does not make defendant's conduct any less a violation of statute). Cf. Commonwealth v. Rosario, 83 Mass. App. Ct. 640, 643 (2013) (evidence of long-standing hostility between defendant and victim does not preclude inference of intent to intimidate; defendant may have acted out of general hostility and, at same time, intended to intimidate victim as witness); United States v. Technodyne LLC, 753 F.3d 368, 385 (2d Cir. 2014) ("It is well established that a defendant accused of [a specific intent] crime may properly be convicted if his intent to commit the crime was any of his objectives"). To conclude that racial animus must be a "substantial factor" motivating the commission of an assault or a battery would undermine the Legislature's purpose in punishing more severely all instances of assault or battery where a defendant's actions were motivated by racial hatred or bigotry. See Barnette, 45 Mass. App. Ct. at 489. Such a conclusion would encourage defendants to allege myriad

other motivating factors for their unlawful conduct so that it would not be deemed a hate crime.

Our interpretation of G. L. c. 265, § 39 (a), is consistent with cases construing G. L. c. 265, § 37, which proscribes, among other actions, the use of force or threat of force to interfere with any other person in the exercise of any right or privilege secured by Federal or State law.[8]  We recognize, as Bratlie correctly points out, that G. L. c. 265, § 37, is a more expansive statute than G. L. c. 265, § 39.[9]  Nonetheless, both are part of a broader statutory scheme to criminalize violations of an individual's civil rights.  In Commonwealth v. Zawatsky, 41 Mass. App. Ct. 392, 398 (1996), a case in which the defendants were prosecuted for so-called "gay bashing" under G. L. c. 265, § 37, the court pointed out that violence of the kind prohibited by G. L. c. 265, § 39, "deprives the victim of a

---

[8] General Laws c. 265, § 37, provides, in relevant part: "No person, whether or not acting under color of law, shall by force or threat of force, willfully injure, intimidate or interfere with, or attempt to injure, intimidate or interfere with, or oppress or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him by the constitution or laws of the commonwealth or by the constitution or laws of the United States."

[9] By its terms, G. L. c. 265, § 37, authorizes criminal penalties for the wilful violation of another person's rights or privileges secured by the Constitution or laws of the United States or of the Commonwealth.  Section 37 does not address the underlying motivation of the perpetrator in committing the offense.  In contrast, G. L. c. 265, § 39, requires that the perpetrator of an assault or a battery have acted because of a victim's race, color, religion, national origin, sexual orientation, gender identity, or disability.

right or privilege secured to the victim under the laws of the Commonwealth and, therefore, violates G. L. c. 265, § 37." Moreover, as relevant to our analysis of § 39, the court in Commonwealth v. Stephens, 25 Mass. App. Ct. 117, 124 (1987), a case in which the defendants were convicted of violating the civil rights of three Asian persons, stated that "[t]he deprivation of civil rights contemplated by G. L. c. 265, § 37, does not have to be the predominant purpose of the defendant's acts" (emphasis added).[10]

It is well established that "where two or more statutes relate to the same subject matter, they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose." Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 513-514 (1975). See Charland v. Muzi Motors, Inc., 417 Mass. 580, 583 (1994) ("a statute is to be interpreted in harmony with prior enactments to give rise to a consistent body of law"). As is the case with G. L. c. 265, § 37, where the deprivation of civil rights does not have to be the predominant purpose of a defendant's acts, see note 10,

_____

[10] In his brief, Shdeed has asserted that the jury should have been instructed that Robinson's race must have been a "substantial factor" in Shdeed's alleged unlawful conduct not only for a conviction under G. L. c. 265, § 39, but also for a conviction under G. L. c. 265, § 37. This argument is without merit. See Commonwealth v. Stephens, 25 Mass. App. Ct. 117, 124 (1987), where the court stated that in order to secure a conviction under G. L. c. 265, § 37, the deprivation of civil rights does not have to be the "predominant" purpose of a defendant's actions.

<u>supra</u>, we do not construe the language in G. L. c. 265, § 39 (<u>a</u>), to mean that racial hostility must be the "sole" reason or a "substantial" reason for a defendant's unlawful conduct. We decline the defendants' request to quantify the statutory language in such terms. All that is required is proof beyond a reasonable doubt that a defendant acted with the specific intent to intimidate a person "because of" race, notwithstanding the presence of any other motive. G. L. c. 265, § 39 (<u>a</u>). Accordingly, we conclude that the judge's supplemental instruction was not erroneous.

3. <u>Required findings of not guilty with respect to violations of G. L. c. 265, §§ 37 and 39</u>. General Laws c. 265, § 37, provides, in relevant part: "No person, whether or not acting under color of law, shall by force or threat of force, willfully injure, intimidate or interfere with, or attempt to injure, intimidate or interfere with, or oppress or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him by the constitution or laws of the commonwealth or by the constitution or laws of the United States." At trial, the Commonwealth proceeded on the theory that it was Robinson's right to personal security that was violated by the defendants' actions, and the judge so instructed the jury.

On appeal, Kelly contends that the evidence was insufficient to permit the jury to find beyond a reasonable doubt the essential elements of a civil rights violation under G. L. c. 265, § 37.  Kelly has not challenged the existence of a right to personal security that is protected by the Constitution or laws of the United States or of the Commonwealth, but she argues that Robinson was not exercising or enjoying such a right when he instigated a physical altercation.  In Kelly's view, Robinson was not an innocent bystander singled out because of his race and attacked without provocation.  Rather, he was the aggressor, initiating hostilities with partygoers by calling them "whores" and "crackers," and by spraying them with dog repellent.  As such, Kelly asserts, there was no violation of Robinson's right to personal security and, therefore, the judge should have allowed her motion for a required finding of not guilty as to the indictment charging a civil rights violation under G. L. c. 265, § 37.  We disagree.

When reviewing the denial of a motion for a required finding of not guilty, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original).  Latimore, 378 Mass. at 677, quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).  The inferences drawn by the jury from

the evidence "need only be reasonable and possible and need not be necessary or inescapable." Commonwealth v. Longo, 402 Mass. 482, 487 (1988), quoting Commonwealth v. Casale, 381 Mass. 167, 173 (1980). A conviction may not rest on the piling of inference upon inference or on conjecture and speculation. See Commonwealth v. Swafford, 441 Mass. 329, 339-343 (2004), and cases cited. However, the evidence of a defendant's guilt may be primarily or entirely circumstantial. See Corson v. Commonwealth, 428 Mass. 193, 197 (1998); Commonwealth v. Donovan, 395 Mass. 20, 25 (1985). "If, from the evidence, conflicting inferences are possible, it is for the jury to determine where the truth lies, for the weight and credibility of the evidence is wholly within their province." Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007). "If a rational jury 'necessarily would have had to employ conjecture' in choosing among the possible inferences from the evidence presented, the evidence is insufficient to sustain the Commonwealth's burden of proving guilt beyond a reasonable doubt." Commonwealth v. Rodriguez, 456 Mass. 578, 582 (2010), quoting Commonwealth v. Croft, 345 Mass. 143, 145 (1962).

Viewing the evidence in the light most favorable to the Commonwealth, the jury could have found that Kelly was part of the attack on Robinson that started in the driveway of the home on Careswell Street and ended on the street in front of the

Garlic Restaurant. There was testimony from numerous witnesses that Kelly pushed Robinson out of the driveway, and that she subsequently kicked and punched him while he was lying in a fetal position on the ground. Notwithstanding Kelly's claim that Robinson had called several of the partygoers "whores" and "crackers," there was countervailing testimony that he had not threatened anyone, used racially charged language, or made derogatory comments toward women.

It was the province of the jury to assess the credibility of the witnesses and thereby decide whom to believe. See Lao, supra, 443 Mass. at 779. There is no dispute that Robinson used dog repellent on several partygoers in the midst of the altercation. However, the jury could have found that Robinson used the repellent in an attempt to either deter or escape from a group of individuals that was converging on him in a threatening manner. Kelly's contention that Robinson was the aggressor belies the Commonwealth's evidence to the contrary, and we must view the evidence not in the light most favorable to Kelly, but in the light most favorable to the Commonwealth. Based on all of the evidence, the jury reasonably could infer that Kelly wilfully interfered with Robinson's right to personal security. It follows, therefore, that the jury could find beyond a reasonable doubt that Kelly violated Robinson's civil rights under G. L. c. 265, § 37. Accordingly, the judge did not

err in denying Kelly's motion for a required finding of not guilty as to that charge.

In a related vein, Bratlie contends on appeal that the judge erred in denying his motions for required findings of not guilty as to the indictments charging assault and battery for the purpose of intimidation under G. L. c. 265, § 39, and a civil rights violation under G. L. c. 265, § 37. He claims that, absent reliance on conjecture, there was insufficient evidence to establish his intent, that is to say, to show that his actions were motivated by, or were because of, race.[11] Significantly missing, Bratlie continues, was evidence that he uttered any statements that specifically demonstrated a racial animus toward Robinson.[12] Moreover, Bratlie asserts that there was no racial context for his actions given that Robinson had, among other things, called partygoers "whores" and "crackers," and had sprayed them with dog repellent. In Bratlie's view, the evidence demonstrated that it was equally likely that his misconduct was due to Robinson's disruptive behavior at the party as it was due to Robinson's race, and, consequently, the

---

[11] In contrast to G. L. c. 265, § 39, the language of G. L. c. 265, § 37, does not require an intent to wilfully injure, intimidate, or interfere with another person's rights or privileges because of such person's race. See note 8, supra.

[12] The Commonwealth proceeded on a joint venture theory with respect to all of the alleged crimes except for a civil rights violation under G. L. c. 265, § 37, and assault and battery for the purpose of intimidation under G. L. c. 265, § 39.

jury would have had to resort to conjecture to determine whether Bratlie's actions were, beyond a reasonable doubt, racially motivated. That being the case, Bratlie argues, the evidence was insufficient to sustain the Commonwealth's burden of proof, and his motions for required findings of not guilty should have been allowed. We disagree.

There was no dispute that Bratlie was part of the attack on Robinson that started in the driveway of the home on Careswell Street and ended on the street in front of the Garlic Restaurant. Christina Sacco testified that Bratlie kicked and punched Robinson while he was lying in the street. She also testified that Bratlie called Robinson a "nigger" during the early part of the altercation while the partygoers were still in the driveway. Further, she stated that she had no trouble distinguishing Christopher Bratlie from his brother, Devin Bratlie, who also was at the party but whom Sacco did not see engaging in the altercation. One of the partygoers, Korrie Molloy, testified that "one of the Bratlie boys" was among a group of partygoers that was punching Robinson after he had been pushed into Careswell Street.[13] Molloy further stated that all

---

[13] At certain points in her testimony, Molloy professed an inability to recall the details surrounding Bratlie's involvement in the attack on Robinson. Consequently, the testimony that Molloy had given before the grand jury regarding what she had observed was read in evidence. On appeal, no party has claimed that the Daye requirements for admission of grand jury testimony were not sufficiently met. See Commonwealth v.

of the individuals in this group were calling Robinson a "nigger," although she did not specifically name Christopher Bratlie as one of the members of this group. During her testimony the next day, Molloy stated that she did not know if the Bratlie brother she had observed had been making racial slurs because she "couldn't hear him specifically." She did not "know what his voice sound[ed] like." However, Molloy testified that she heard him make those statements earlier "in the other fight."

When Molloy's testimony was considered in conjunction with that of Sacco, the jury reasonably could infer, without resorting to conjecture, that Christopher Bratlie wilfully interfered with Robinson's right to personal security, and that Bratlie committed an assault or a battery on Robinson with the intent of intimidating him because of his race. It was entirely within the province of the jury to deem the equivocal testimony of Molloy regarding which of the Bratlie brothers was involved in the altercation not credible. See Federico, 425 Mass. at 848. Moreover, even if Bratlie's unlawful conduct also was attributable to Robinson's purported disruptive behavior at the party, as he claims, that fact did not invalidate his convictions. See Stephens, 25 Mass. App. Ct. at 124. Accordingly, the judge did not err in denying Bratlie's motions

Daye, 393 Mass. 55, 66 (1984), overruled on other grounds by Commonwealth v. Cong Duc Le, 444 Mass. 431 (2005).

for required findings of not guilty as to the indictments charging assault and battery for the purpose of intimidation and a civil rights violation.

4. <u>Jury instructions on civil rights violation under G. L. c. 265, § 37</u>. The trial judge instructed the jury on the elements comprising a violation of G. L. c. 265, § 37, generally in accordance with Instruction 6.620 of the Criminal Model Jury Instructions for Use in the District Court (2009) (Instruction 6.620). However, when describing the first element that the Commonwealth was required to prove beyond a reasonable doubt, namely the "exercise or enjoyment of any right or privilege secured to [Robinson] by the constitution or laws of the commonwealth or by the constitution or laws of the United States," G. L. c. 265, § 37, the judge added the following language to the model jury instruction: "As a matter of law, racially motivated violence violates the right to personal security enjoyed by all persons no matter their race." The judge reiterated this instruction shortly thereafter when he stated: "Again, I inform you that as a matter of law all persons have the right to be secure in their person. Racially motivated violence violates the right to personal security enjoyed by all persons no matter their race." Finally, the judge repeated this instruction a third time when he stated that "the right to personal security . . . is violated by violence

against a person who is selected as a victim and harmed because of his or her race. This right is violated by racially motivated violence by private persons; that is, persons who are not acting in an official government capacity."

Kelly contends for the first time on appeal that these jury instructions were improper because they relieved the Commonwealth of its burden of proving that Kelly violated Robinson's right to personal security. In her view, the judge's instructions placed artificial importance on race and suggested that if it played any role in the motivation behind the altercation, then Robinson's right to personal security had been violated. Kelly points out that the language of G. L. c. 265, § 37, includes no reference to a victim's race or other characteristics. Therefore, she continues, the race of an alleged victim should have no greater evidentiary value than any other evidence with respect to a civil rights violation. Kelly asserts that because the jury instructions on this charge focused on race, the judge improperly conflated a violation of G. L. c. 265, § 37, with a violation of G. L. c. 265, § 39, which does require a racial intent. By so doing, Kelly argues, the judge confused the jury by suggesting that if a defendant is found guilty of violating § 39, then the first element of § 37 has been satisfied, thereby relieving the Commonwealth of its

burden of proof as to that element. We disagree with Kelly's interpretation of the judge's instructions.

We evaluate jury instructions as a whole and interpret them as would a reasonable juror. Commonwealth v. Trapp, 423 Mass. 356, 361, cert. denied, 519 U.S. 1045 (1996). We do not require that judges use particular words, but only that they convey the relevant legal concepts properly. Id. at 359. Because Kelly did not object at trial to the jury instructions pertaining to a civil rights violation under G. L. c. 265, § 37, we review her claim to determine whether there was an error and, if so, whether the error created a substantial risk of a miscarriage of justice. See Commonwealth v. Belcher, 446 Mass. 693, 696 (2006). This standard "requires us to determine 'if we have a serious doubt whether the result of the trial might have been different had the error not been made.'" Commonwealth v. Azar, 435 Mass. 675, 687 (2002), quoting Commonwealth v. LeFave, 430 Mass. 169, 174 (1999).

Here, the judge plainly explained that the Commonwealth was required to prove beyond a reasonable doubt that Robinson was exercising a protected right or privilege. It goes without saying that State and Federal laws protect myriad individual rights. The additional language that the judge incorporated into Instruction 6.620 explained, in specific terms, that, given the Commonwealth's theory of the case, the right being enjoyed

by Robinson was one of personal security, and that racially motivated violence against Robinson would constitute an infringement on that right. The elements of G. L. c. 265, § 37, cannot be divorced from the facts surrounding the altercation on Careswell Street, and the additional language employed by the judge simply reflected the context in which Kelly's actions should be evaluated by the jury. Moreover, the judge did not err in stating the general proposition that racially motivated violence directed at an individual would interfere with that individual's right to personal security. See Stephens, 25 Mass. App. Ct. at 123-124.

In our view, the judge's instructions did not conflate a violation of G. L. c. 265, § 37, with a violation of G. L. c. 265, § 39. During his general instructions, the judge informed the jury that they "must consider the Commonwealth's case against each defendant separately and [they] must consider each indictment as to each defendant separately." In his specific instructions, the judge first explained the distinct elements of a violation of G. L. c. 265, § 37, and then he proceeded to describe the elements of a violation of G. L. c. 265, § 39. Finally, the judge reiterated at the end of his instructions that the jury "must consider each indictment separately." The fact that the judge explained a violation of personal security under G. L. c. 265, § 37, in the context of

racial violence did not relieve the Commonwealth of its burden of proving all of the elements of that offense. Moreover, to the extent that the jury were unclear whether their findings as to Kelly's violation of § 39 could be used in considering whether she had violated § 37, the judge gave a supplemental clarifying instruction. During deliberations, the judge received the following question from the jury: "Should previous decisions made on indictments influence or be considered when deciding about other indictments or should each indictment be considered separately regardless of previous decisions?" The judge responded by informing the jury twice that "each indictment must be decided individually." We conclude that the instructions taken as a whole would not have confused a reasonable juror regarding the law pertaining to a violation of G. L. c. 265, § 37. There was no error in the judge's instructions.

5. Duplicative convictions. Bratlie first contends that his conviction of assault and battery as a lesser included offense of assault and battery by means of a dangerous weapon (shod foot) and his conviction of simple assault and battery are duplicative because the judge did not instruct the jury that these offenses must be based on separate and distinct acts. Bratlie concedes that there was evidence presented at trial that could have supported separate assault and battery convictions.

He acknowledges that the jury could have found that he pushed Robinson out of the driveway, that he tackled Robinson to seize the dog repellent, that he punched Robinson after tackling him, and that he kicked Robinson while Robinson was lying in Careswell Street.  However, in Bratlie's view, the judge's failure to instruct on separate and distinct acts, or, at the very least, to make clear to the jury which alleged acts corresponded to which charges, was fatal to his convictions of both offenses.  Accordingly, Bratlie argues that one of these assault and battery convictions must be dismissed as duplicative.  We agree.

Where, as here, Bratlie did not raise the issue of duplicative convictions below, we review his claim to determine whether there was an error and, if so, whether the error created a substantial risk of a miscarriage of justice.  See Commonwealth v. Gouse, 461 Mass. 787, 799 (2012); Commonwealth v. King, 445 Mass. 217, 225 (2005), cert. denied, 546 U.S. 1216 (2006).  "Assault and battery is a lesser included offense of assault and battery by means of a dangerous weapon."  Gouse, supra at 798, quoting Commonwealth v. Jackson, 80 Mass. App. Ct. 528, 529 (2011).  See G. L. c. 265, §§ 13A, 15A (c).  Convictions of greater and lesser included offenses are allowed when they "rest on separate and distinct acts."  King, supra.  "Whether a defendant's actions constitute separate and distinct

acts or must be considered a single crime is a question of fact for the jury to resolve." Commonwealth v. Vick, 454 Mass. 418, 435 n.16 (2009).

Convictions of two cognate offenses will be sustained "where the judge instructs the jury explicitly that they must find separate and distinct acts underlying the different charges." Commonwealth v. Berrios, 71 Mass. App. Ct. 750, 753-754 (2008). See King, 445 Mass. at 226 (judge properly instructed jury that forcible rape of child and indecent assault and battery must rest on separate and distinct acts, each of which judge carefully described); Commonwealth v. Maldonado, 429 Mass. 502, 509-510 (1999) (judge specifically instructed jury that convictions of assault and battery by means of dangerous weapon and murder must rest on separate and distinct acts). See also Gouse, 461 Mass. at 799 (no substantial risk of miscarriage of justice where, although judge did not use exact words "separate and distinct act," he made clear that two indictments were based on separate acts, each of which he described with particularity). Where, however, the judge does not clearly instruct the jury that they must find that the defendant committed separate and distinct criminal acts to convict on the different charges, the conviction of the lesser included offense must be vacated as duplicative, even in the absence of an objection, if there is any significant possibility that the jury

may have based convictions of greater and lesser included offenses on the same act or series of acts.  See Commonwealth v. Thomas, 400 Mass. 676, 681 (1987) (vacating lesser included offense and stating that appellate court "need not consider whether the evidence would support a finding of two separate incidents in this case, because the judge did not instruct the jury that the convictions must be based on separate acts").  See also Commonwealth v. Sanchez, 405 Mass. 369, 381-382 (1989) (conviction of indecent assault and battery duplicative of conviction of forcible rape of child where judge did not instruct jury that convictions must be based on separate acts); Commonwealth v. Howze, 58 Mass. App. Ct. 147, 150-152 (2003); Commonwealth v. Juzba, 46 Mass. App. Ct. 319, 325 (1999).

We reiterate that we review here the judge's failure to properly instruct the jury that convictions of greater and lesser included offenses must be based on separate and distinct acts to determine whether such error created a substantial risk of a miscarriage of justice.  "A substantial risk of a miscarriage of justice exists when we have 'a serious doubt whether the result of the trial might have been different had the error not been made.'"  Commonwealth v. Randolph, 438 Mass. 290, 297 (2002), quoting Azar, 435 Mass. at 687.  "Errors of this magnitude are extraordinary events and relief is seldom granted."  Randolph, supra, citing Commonwealth v. Amirault, 424

Mass. 618, 646-647 (1997). "In analyzing a claim under the substantial risk standard, '[w]e review the evidence and the case as a whole.'" Randolph, supra, quoting Azar, supra.

Over the years, it has been stated that convictions must be vacated as duplicative if there is any possibility that the jury may have based convictions of greater and lesser included offenses on the same act. See Berrios, 71 Mass. App. Ct. at 753-755 ("Convictions of two cognate offenses will be sustained where there is no chance that the finder of fact based the two offenses upon the same act . . . . [I]f there is any possibility that the jury's verdicts were premised on a single act, then reversal of the lesser offense is required"); Howze, 58 Mass. App. Ct. at 150 ("[I]f there is any possibility that the jury's verdicts here were premised on a single act, reversal as to the lesser offense . . . would be required"); Commonwealth v. Black, 50 Mass. App. Ct. 477, 478-479 (2000) ("Unless the judge cautions otherwise, there is a theoretical possibility that the jury could base both the rape and indecent assault and battery convictions on the same act. If there is no indication in the record that such a possibility is insubstantial, the conviction of the lesser included offense will be vacated to avoid the possible miscarriage of justice"). The appropriate inquiry is whether there is any significant possibility that the jury may have based convictions of greater and lesser included

offenses on the same act. Although this inquiry is less generous to a defendant, it is more consistent with the substantial risk of a miscarriage of justice standard of review.[14]

In the present case, the judge instructed the jury on the elements of assault and battery by means of a dangerous weapon, and he explained that the dangerous weapon attributable to Bratlie was a shod foot. The judge further instructed that if the Commonwealth had not met its burden of proof beyond a reasonable doubt with respect to this offense, then the jury should consider whether the Commonwealth had established that the defendant was guilty of the lesser included offense of assault and battery. The judge then instructed the jury on the elements of assault and battery. He reiterated that the jury could consider assault and battery as a lesser included offense of assault and battery with a dangerous weapon, and he also stated that Bratlie was "charged directly with assault and battery" on Robinson. In neither his regular nor his supplemental instructions did the judge inform the jury that a conviction of assault and battery by means of a dangerous weapon (shod foot) had to be based on acts that were separate and distinct from those supporting a conviction of assault and

---

[14] We do not address whether a defendant is entitled to a less forgiving standard of review if the defendant has objected to the judge's failure to give an instruction on the need to find separate and distinct criminal acts.

battery. That the judge instructed the jury several times that they must consider each indictment separately did not equate to informing the jury that these two charged offenses must be factually based on separate and distinct acts. Moreover, neither the indictments nor the verdict slips received by the jury identified the respective conduct for each charge. Not only did the judge not use the words "separate and distinct acts," see Thomas, 400 Mass. at 680-682, but, alternatively, he also did not describe with particularity which alleged acts supported which charges. Contrast Gouse, 461 Mass. at 799.

On the basis of the instructions given, it is impossible for us to know on which facts each conviction rested. We recognize, as the Commonwealth points out, that the prosecutor, in his opening and closing statements, described how the evidence demonstrated that the altercation occurred in two parts -- the first as Robinson was being pushed out of the driveway and up Careswell Street, and the second as Robinson was lying in a fetal position on the ground while being kicked and punched by partygoers. However, the prosecutor did not specifically point out which alleged acts corresponded to which charges. We conclude that even where, as here, there was evidence of separate and distinct acts sufficient to convict with respect to each assault and battery charge, the judge's failure to instruct the jury that each charge must be based on a separate and

distinct act created a substantial risk of a miscarriage of justice.

Bratlie further contends that assault and battery is a lesser included offense of assault and battery for the purpose of intimidation under G. L. c. 265, § 39.  As such, he continues, the judge's failure to instruct the jury that these offenses must be based on separate and distinct acts rendered his assault and battery convictions duplicative of his conviction of assault and battery for the purpose of intimidation without bodily injury.  We agree with Bratlie that assault and battery is a lesser included offense of assault and battery for the purpose of intimidation.  However, with respect to Bratlie's one remaining conviction of assault and battery, we conclude that, while it is a close call, the judge's failure to instruct on separate and distinct acts did not create a substantial risk of a miscarriage of justice where, based on our review of the evidence, there was no significant possibility that the jury based this conviction and his conviction of assault and battery for the purpose of intimidation on the same act.

"Under our long-standing rule derived from Morey v. Commonwealth, 108 Mass. 433, 434 (1871), a lesser included offense is one whose elements are a subset of the elements of the charged offense."  Commonwealth v. Porro, 458 Mass. 526, 531

(2010).  See Vick, 454 Mass. at 431-434; Commonwealth v. Jones, 382 Mass. 387, 393 (1981).  Thus, a "lesser included offense is one which is necessarily accomplished on commission of the greater crime."  Commonwealth v. D'Amour, 428 Mass. 725, 748 (1999).  "The test is whether, '[i]n order to convict [of the greater offense], all the elements of [the lesser offense] must be found, plus an additional aggravating factor.'"  Commonwealth v. Schuchardt, 408 Mass. 347, 351 (1990), quoting Commonwealth v. Sherry, 386 Mass. 682, 695 (1982).  See Commonwealth v. Pimental, 454 Mass. 475, 482 (2009).

As pertinent here, the essential elements of the crime of assault or battery for the purpose of intimidation are (1) the commission of an assault or a battery, (2) with the intent to intimidate, (3) because of a person's race, color, religion, national origin, sexual orientation, or disability.  G. L. c. 265, § 39.  See Barnette, 45 Mass. App. Ct. at 489.  Assault and battery is a common-law crime that has been codified in G. L. c. 265, § 13A ("Whoever commits an assault or an assault and battery upon another shall be punished . . .").  Assault is defined as either a threat to use physical force on another, or an attempt to use physical force on another.  See Porro, 458 Mass. at 530-531; Commonwealth v. Gorassi, 432 Mass. 244, 247-248 (2000); Commonwealth v. Shaffer, 367 Mass. 508, 515 (1975).  Criminal battery is defined as harmful or offensive touching.

See Porro, supra at 529-530 (explaining intentional battery and reckless battery). See also Commonwealth v. Burke, 390 Mass. 480, 482-483 (1983). "Every battery includes an assault." Id. at 482.

Based on our well-established, elements-based approach to analyzing purported duplicative convictions, we conclude that assault and battery is a lesser included offense of assault and battery for the purpose of intimidation. The latter crime includes all of the elements of the former crime, plus the additional elements of specific intent to intimidate because of an individual's race, color, religion, national origin, sexual orientation, gender identity, or disability. These additional elements are aggravating factors that "enhance the penalty of criminal conduct when it is motivated by racial hatred or bigotry." Anderson, 38 Mass. App. Ct. at 709 n.5.

In this case, however, the jury were not given the option of convicting Bratlie of assault and battery as a lesser included offense of assault and battery for the purpose of intimidation. When discussing his proposed jury instructions with counsel for the defendants and the Commonwealth, the judge stated his belief that simple assault and battery was not a lesser included offense of assault and battery for the purpose of intimidation. Consequently, with respect to the verdict slip on the charge of assault and battery for the purpose of

intimidation resulting in bodily injury, G. L. c. 265, § 39 (b), the only enumerated lesser included offense was assault and battery for the purpose of intimidation with no bodily injury. It follows, therefore, that the jury must have based Bratlie's conviction of assault and battery for the purpose of intimidation with no bodily injury on an act that was separate and distinct from the one that supported his conviction of assault and battery, where the evidence was clear that Bratlie kicked and punched Robinson when he was curled up in a fetal position and Robinson suffered bodily injury. Bratlie's convictions of these two crimes are not duplicative. The judge's failure to instruct the jury on separate and distinct acts did not create a substantial risk of a miscarriage of justice in these particular circumstances. Contrast Sanchez, 405 Mass. at 381-382 (Commonwealth did not argue that lesser included offense constituted wholly separate act from greater offense); Thomas, 400 Mass. at 680-682 (analysis of duplicative convictions not based on substantial risk of miscarriage of justice standard of review).

6. Conclusion. With respect to Kelly, her convictions are affirmed. With respect to Shdeed, his convictions are affirmed. With respect to Bratlie, his convictions of a violation of civil rights without bodily injury, assault and battery for the purpose of intimidation without bodily injury, and one count of

assault and battery are affirmed.  His conviction of, and sentence for, a second count of assault and battery is vacated as duplicative.

<u>So ordered</u>.

LENK, J. (concurring in part and dissenting in part, with whom Botsford and Duffly, JJ., join). I agree with the court's reasoning and conclusions on virtually all of the issues presented in this case. My only disagreement concerns the claim of the defendant, Christopher Bratlie, that three of his convictions were duplicative.

I accept the court's rendering of the applicable principles.[1] I agree with the court that, under these principles, Bratlie's two convictions of assault and battery are potentially duplicative, essentially because "[o]n the basis of the instructions given, it is impossible for us to know on which facts each conviction rested." Ante at . I do not, however, share the court's view that there is no significant possibility that Bratlie's remaining conviction of assault and battery is

---

[1] As the court explains, convictions of "cognate" offenses, namely a greater offense and a lesser included offense, are permissible only if they "rest on separate and distinct acts." Ante at , quoting Commonwealth v. King, 445 Mass. 217, 226 (2005), cert. denied, 546 U.S. 1216 (2006). The judge at a trial on cognate offenses must impart this rule to the jury, either by "instruct[ing] the jury explicitly that they must find separate and distinct acts underlying the different charges" or by "ma[king] clear that [the] indictments [a]re based on separate acts, each of which [is] described with particularity." Ante at , quoting Commonwealth v. Berrios, 71 Mass. App. Ct. 750, 753-754 (2008), and citing Commonwealth v. Gouse, 461 Mass. 787, 799 (2012). Failure to provide such instructions requires reversal of the lesser conviction if there is "any significant possibility" that the jury may have based cognate convictions on the same act. See ante at .

duplicative of his conviction of assault and battery for the purpose of intimidation.

The court's line of reasoning on this point, as I understand it,[2] runs as follows: (a) one of the two convictions was surely based on acts by Bratlie that caused the victim bodily injury, "where the evidence was clear that Bratlie kicked and punched [the victim] when he was curled up in a fetal position and [the victim] suffered bodily injury," ante at   ; (b) only the assault and battery conviction could have been based on an act by Bratlie that resulted in bodily injury, since the conviction of assault and battery for the purpose of intimidation was returned as a lesser included offense of assault and battery for the purpose of intimidation with the

---

[2] The court notes that "the jury were not given the option of convicting Christopher Bratlie of assault and battery as a lesser included offense of assault and battery for the purpose of intimidation." Ante at   . I do not understand this fact to form the basis for the court's conclusion that Bratlie's convictions of assault and battery and of assault and battery for the purpose of intimidation were based on separate acts. If we assume that the jury viewed assault and battery and assault and battery for the purpose of intimidation as noncognate offenses, each requiring proof of an element not required by the other, then the jury could well have concluded that a single act would support Bratlie's convictions of both offenses. See Commonwealth v. Vick, 454 Mass. 418, 431 (2009). Otherwise put, the fact that the jury were incorrectly led to think that assault and battery and assault and battery for the purpose of intimidation are noncognate offenses did not reduce the risk that they based the convictions of these two offenses on a single act. See Commonwealth v. Thomas, 400 Mass. 676, 680-682 (1987) (reversing lesser conviction where judge failed to provide "separate acts" instruction and did not present offenses to jury as cognate offenses).

additional element of resultant bodily injury; and

(c) correspondingly, the conviction of assault and battery for the purpose of intimidation must have been based on earlier acts by Bratlie, namely his participation in the group that chased the victim out of the Careswell Street driveway, threatening him and calling him a "nigger."  In my view, this line of reasoning is not compelling.

To begin with, we cannot safely assume that the jury found that Bratlie was responsible for any injuries suffered by the victim.  To be sure, the evidence would have supported such a finding; but we do not know what portions of this evidence the jury believed and what inferences they drew from it.  For instance, the jury did not find that Kevin Shdeed, one of Bratlie's codefendants, caused the victim bodily injury.  There was testimony that Shdeed, like Bratlie, kicked and punched the victim while he was lying on the ground.  See <u>ante</u> at    .  Shdeed also reportedly hit the victim with a large stick.  See <u>ante</u> at    .  But, although Shdeed was charged with violations of civil rights resulting in bodily injury, and with assault and battery for the purpose of intimidation resulting in bodily injury (among other offenses), the jury convicted him only of the lesser included versions of these offenses that did not contain the element of resultant bodily injury.

The jury similarly could have entertained a reasonable doubt whether Bratlie's acts caused the injuries suffered by the victim. If we do not assume that the jury found that Bratlie caused the victim bodily injury, we cannot proceed to identify, as the court seeks to do, which of Bratlie's acts supported which of his convictions; any of those convictions could have been based on any of the acts with which Bratlie was charged.

Moreover, the court's inference that Bratlie's conviction of assault and battery for the purpose of intimidation was based on his noninjury-causing acts, early on in the confrontation, does not square with the court's own analysis elsewhere in the opinion. One of Bratlie's other arguments is that the evidence was insufficient to support his conviction of assault and battery for the purpose of intimidation. See ante at    . In rejecting that argument, the court relies specifically on evidence concerning Bratlie's involvement in the final, most violent phase of the attack against the victim. This evidence included the testimony of one witness, Christina Sacco, that Bratlie kicked and punched the victim while he was lying in the street; and that of another witness, Korrie Molloy, that all of the individuals in the group attacking the victim at that time were calling him a "nigger." See ante at    .[3] The court's own

_____

[3] As the court's analysis suggests, this was the evidence that most strongly supported Bratlie's conviction of assault and

analysis thus suggests a significant possibility that Bratlie's conviction of assault and battery for the purpose of intimidation was based on the very same acts that, in the current context, the court identifies as the likely basis of the assault and battery conviction.

For these reasons, my view is that here, too, "it is impossible for us to know on which facts each conviction rested." <u>Ante</u> at  . Given that the jury were not instructed that convictions of cognate offenses must be based on separate acts, there is a significant possibility that Bratlie's conviction of assault and battery and his conviction of assault and battery for the purpose of intimidation were based on the same act. I would therefore reverse Bratlie's remaining conviction of assault and battery as well.

---

battery for the purpose of intimidation. Accordingly, if -- as the court assumes -- the jury believed that Bratlie caused the victim bodily injury, it is puzzling that they did not convict him of assault and battery for the purpose of intimidation with the charged element of resultant bodily injury.